JASON SCOTT WALLS, APPELLANT, V.
JAMES SHRECK, M.D., APPELLEE.
658 N.W.2d 686

Filed April 4, 2003.    No. S-02-149.

J. Blake Edwards and Robert Harvoy, of McGinley, O'Donnell, Reynolds & Edwards, P.C., L.L.O., for appellant.

William R. Settles, of Lamson, Dugan & Murray, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Jasón Scott Walls appeals from a directed verdict in favor of James Shreck, M.D. In his operative petition, Walls alleged that Shreck performed surgery on Walls' right eye without obtaining informed consent.

## SCOPE OF REVIEW

■ In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Reicheneker v. Reicheneker*, 264 Neb. 682, 651 N.W.2d 224 (2002).

## FACTS

As a child, Walls had a condition that caused his left eye to be out of alignment with his right eye. He had surgery on his left

eye to correct the condition, but it reoccurred several years later. In March 1999, Walls sought medical treatment from Shreck in North Platte. Shreck is a physician and surgeon licensed under the laws of the State of Nebraska and is a health care provider under the Nebraska Hospital-Medical Liability Act.

Walls met with Shreck and discussed the possibility of strabismus surgery on his left eye to correct the condition. This surgery involves a procedure on the affected eye or on the opposite eye, and the object of the surgery is to bring both eyes into alignment. Walls and Shreck agreed that the best approach to treating Walls was to attempt surgery on the left eye. Shreck testified he told Walls that although the goal was to operate on the left eye, he might have to operate on the right eye instead. Walls testified that he specifically informed Shreck that he did not want surgery performed on his right eye. Shreck admitted that he did not discuss operating on both eyes at the same time.

Prior to surgery, Walls signed an authorization and consent form that included the following language:

> a. I hereby authorize Dr. <u>Shreck</u> . . . to perform the following procedure and/or alternative procedure necessary to treat my condition: . . . <u>Recesion [sic] and Resection of the Left Eye</u>[.]

> b. I understand the reason for the procedure is: <u>to straigghten [sic] my left eye to keep it from going to the left</u>[.]

> . . . .

> d. It has been explained to me that conditions may arise during this procedure whereby a different procedure or an additional procedure may need to be performed and I authorize my physician and his assistants to do what they feel is needed and necessary.

During surgery on April 13, 1999, Shreck encountered excessive scar tissue on the muscles of Walls' left eye and elected to adjust the muscles of the right eye instead.

When Walls awoke from the anesthesia, he expressed surprise and anger at the fact that both of his eyes were bandaged. The next day, Walls went to Shreck's office for a followup visit and adjustment of his sutures. Walls questioned Shreck as to the reason he operated on Walls' right eye, and Shreck responded that he had reserved the right to change his mind during surgery.

Walls testified that he would never have entered the hospital if he had known there was a possibility of surgery on his right eye, because he had so many problems with his left eye after the childhood surgery. He said that prior to surgery, he had no problems with his right eye. He also testified that following the April 1999 surgery, he has had daily problems with his right eye.

At trial, Dr. Thomas Roussel provided expert medical testimony on behalf of Walls. Roussel was the only expert witness to testify regarding the standard of care for obtaining informed consent prior to strabismus surgery.

After Walls presented his evidence and rested his case, Shreck moved for a directed verdict and a dismissal. He alleged that Walls had failed to prove a prima facie case. Shreck claimed that there had been no expert testimony that he had failed to obtain Walls' informed consent for the procedure. The trial court concluded that Walls had failed to establish the standard of care required in this situation or that Shreck had violated the standard of care. It sustained Shreck's motion for directed verdict and dismissed the action. Walls timely appealed.

## ASSIGNMENTS OF ERROR

Walls assigns the following errors: The trial court erred (1) as a matter of law in granting Shreck's motion for directed verdict and (2) in viewing the testimony presented by Walls in a light that was not most favorable to him when considering the motion for directed verdict.

## ANALYSIS

In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Reicheneker v. Reicheneker*, 264 Neb. 682, 651 N.W.2d 224 (2002). A trial court should direct a verdict as a matter of law only when the facts are conceded, undisputed, or such that reasonable minds can draw but one conclusion therefrom. *Jay v. Moog Automotive*, 264 Neb. 875, 652 N.W.2d 872 (2002).

In sustaining Shreck's motion for directed verdict, the trial court noted that Walls bore the burden to establish the standard of care by expert testimony. It concluded that Walls failed to meet this burden. The court stated:

[Y]our position is that you did not consent to surgery on your right eye, but based upon the consent form which you signed . . . and the testimony specifically of Dr. Roussel . . . there can be extenuating circumstances when the surgeon exceeds the scope of what was discussed pre-surgery with the patient — and I didn't get the impression from Dr. Roussel that he was talking about an emergency situation.

I got the impression that he was talking about surgeries in general. And that's exactly what Dr. Shreck has said; that he started working on your left eye and determined that because of either prior surgery or scarring, that he could not make the necessary corrections in his opinion, and that's why he went to the right eye to try to solve the problem.

. . . I don't feel that there has been any expert evidence that Dr. Shreck violated the standard of care with reference to an informed consent situation here.

A physician's duty to obtain informed consent is measured by the standard of a reasonable medical practitioner under the same or similar circumstances and must be determined by expert medical testimony establishing the prevailing standard and the defendant-practitioner's departure therefrom. *Robinson v. Bleicher*, 251 Neb. 752, 559 N.W.2d 473 (1997).

We review the evidence to determine whether Walls has established by expert testimony (1) the standard of care in North Platte and similar communities for obtaining informed consent prior to performing surgery and (2) whether there was sufficient evidence to establish that Shreck violated such standard of care. We are required to give Walls the benefit of every inference that can reasonably be deduced from the evidence. See *Reicheneker v. Reicheneker, supra.*

## STANDARD OF CARE

The Legislature has defined informed consent as follows:

Informed consent shall mean consent to a procedure based on information which would ordinarily be provided to

the patient under like circumstances by health care providers engaged in a similar practice in the locality or in similar localities. Failure to obtain informed consent shall include failure to obtain any express or implied consent for any operation, treatment, or procedure in a case in which a reasonably prudent health care provider in the community or similar communities would have obtained an express or implied consent for such operation, treatment, or procedure under similar circumstances.

See Neb. Rev. Stat. § 44-2816 (Reissue 1998).

Under § 44-2816, there are two parts to the definition of informed consent. The first part refers to the information that is provided to the patient regarding the procedure that is to be performed. Depending on the established standard of care, the information might include a description of what is going to be done, an assessment of the risks involved, and other options that might be considered. The second part refers to the obligation of the health care provider to obtain the patient's express or implied consent to perform any operation, treatment, or procedure.

Roussel, an ophthalmologist from Scottsbluff, testified on behalf of Walls. Roussel stated that it was customary to discuss with patients the potential risks of a surgery, the potential benefits, and the alternatives to surgery. Roussel opined that the standard of care for obtaining informed consent required a physician to discuss with his or her patients on which part of the body surgery would be performed. Roussel stated that he thought the standard for performing a strabismus surgery would be the same as for any type of operation. When asked whether that standard was centralized to Scottsbluff or North Platte, Roussel testified that "in our country[,] medical ethics requires informed consent." Roussel also stated that the standard of care for surgery involving nonemergency procedures requires informed consent.

Roussel was then asked a hypothetical question: "[I]f surgery . . . to a body part of a patient is not discussed with that patient and surgery is then performed, does that violate the standard for informed consent?" The trial court instructed Roussel to express his opinion if it was based on a reasonable degree of medical certainty in his field of ophthalmology. Roussel responded: "Well, my feeling is that if there are extenuating circumstances, that can

cause a surgeon to, you know, make a judgment that is in the best interests of the patient to do what he feels at the time is necessary." Walls' attorney asked: "Are you saying that talking to the patient is required about the surgery or not required?" Roussel responded: "Well, you normally discuss as many contingencies as you can think of ahead of time." Roussel was not asked to define extenuating circumstances, and he was not asked any further questions on this topic.

Giving Walls the benefit of every inference which can reasonably be deduced from the evidence, we conclude that Roussel's testimony established that the standard of care in North Platte and similar communities required Shreck to obtain informed consent before performing strabismus surgery on Walls' right eye. To obtain Walls' informed consent, Shreck was not only required to provide certain information regarding the operation, but he was also required to obtain Walls' express or implied consent for the operation. See § 44-2816. Walls presented sufficient evidence by expert testimony to establish the standard of care in this case.

### ALLEGED BREACH

We next examine whether Walls presented sufficient evidence to establish that Shreck violated the standard of care by operating on Walls' right eye without obtaining informed consent. The trial court concluded that Walls had failed to prove that Shreck had violated the standard of care.

Shreck argues that he obtained informed consent:

> Walls may argue that Dr. Shreck testified that this consent form did not give "permission to do surgery on both eyes." . . . However, this misconstrues Dr. Shreck's testimony. Dr. Shreck opined that he had obtained the patient's informed consent not from the form but from "what we discussed with the patient in the office." . . . The form itself does not operate to give or deny permission for anything. Rather, it is *evidence* of the discussions which occurred and during which informed consent was obtained. *See, e.g., Hondroulis v. S[c]huhmacher*, 553 So.2d 398 (La. 1988).

Brief for appellee at 12. Shreck therefore asserts that he obtained informed consent to operate on both eyes based on his office discussions with Walls.

■ In *Robinson v. Bleicher*, 251 Neb. 752, 559 N.W.2d 473 (1997), we held that a physician's duty to obtain informed consent is measured by the standard of a reasonable medical practitioner under the same or similar circumstances and must be determined by expert medical testimony establishing the prevailing standard and the defendant-practitioner's departure therefrom. In deciding whether a patient was properly informed concerning an operation, expert testimony would be required to determine whether the information furnished to the patient was that which would ordinarily be provided to a patient under like circumstances. See *id.* However, whether expressed or implied consent to an operation was obtained does not necessarily require expert testimony. The performance of surgery upon part of a patient's anatomy that the patient has instructed the surgeon not to operate falls within an exception to the requirement of expert testimony on the issue of informed consent.

■ Ordinarily, in a medical malpractice case, the plaintiff must prove the physician's negligence by expert testimony. *Fossett v. Board of Regents*, 258 Neb. 703, 605 N.W.2d 465 (2000). In *Fossett*, we recognized an exception to the rule that expert testimony is required to prove whether the treatment by a physician or a surgeon demonstrated a lack of skill or knowledge or a failure to exercise reasonable care, citing *Halligan v. Cotton*, 193 Neb. 331, 227 N.W.2d 10 (1975). In *Halligan*, we stated: "One of the exceptions to the requirement of expert testimony is the situation where the evidence and the circumstances are such that the recognition of the alleged negligence may be presumed to be within the comprehension of laymen." 193 Neb. at 335-36, 227 N.W.2d at 13. This exception is referred to as the "common knowledge exception."

Generally, this exception is applicable in cases where the physician fails to remove a foreign object from a patient's body or where a patient enters the hospital for treatment of one part of the body and sustains injury to another part of the body. See, *Boyd v. Chakraborty*, 250 Neb. 575, 550 N.W.2d 44 (1996); *Swierczek v. Lynch*, 237 Neb. 469, 466 N.W.2d 512 (1991). In *Swierczek*, we stated that it is "within the common knowledge and experience of a layperson to determine that an individual does not enter the hospital for extraction of her teeth and come out with an injury to

nerves in her arms and hands, without some type of negligence occurring." 237 Neb. at 478, 466 N.W.2d at 518.

Shreck obtained Walls' informed consent to perform surgery on his left eye. However, the issue of whether Shreck obtained Walls' informed consent to perform surgery on the right eye is problematic. Failure to obtain informed consent includes failure to obtain express or implied consent for any operation in which a reasonably prudent health care provider would have obtained such consent. See § 44-2816. Thus, the lack of express or implied consent to operate on a particular part of one's anatomy or a refusal to give express or implied consent to so operate is a failure to obtain informed consent. Roussel opined that medical ethics requires informed consent.

The evidence shows that Shreck did not discuss with Walls that surgery might be required on both eyes during the same operation. There is evidence that Walls specifically told Shreck he did not want surgery performed on the right eye. Walls stated that he would never have entered the hospital had he known there was a possibility of surgery on his right eye.

Shreck stated that he was unable to complete the strabismus surgery on Walls' left eye and therefore switched his focus to the right eye and performed the surgery on that eye. When questioned as to the reason for operating on the right eye, Shreck stated that he had reserved the right to change his mind. However, he also stated to Walls' father that he should have done a better job of informing Walls as to the possibility of surgery on the right eye. This evidence creates an inference that Shreck did not obtain informed consent to operate on the right eye.

Giving Walls the benefit of every inference which can reasonably be deduced from the evidence, we conclude that the facts are not such that reasonable minds can draw but one conclusion with regard to whether Shreck obtained informed consent to perform surgery on Walls' right eye. There is evidence that Walls specifically told Shreck he did not want surgery performed on the right eye. Evidence of the discussions which occurred between Walls and Shreck do not establish as a matter of law that Shreck obtained informed consent to perform surgery on both eyes or that he obtained such consent to operate on the right eye.

Expert testimony was not required to establish that Walls did not give express or implied consent for Shreck to operate on his right eye. If Shreck operated on the right eye without Walls' express or implied consent, then the common knowledge exception is applicable in establishing whether Shreck met the standard of care regarding informed consent to perform the surgery. Therefore, it would not be necessary to establish by expert testimony that Shreck violated the standard of care by operating on Walls' right eye. Absent an emergency, it is common knowledge that a reasonably prudent health care provider would not operate on part of a patient's body if the patient told the health care provider not to do so.

## CONCLUSION

The trial court erred in directing a verdict in favor of Shreck. The evidence presented and the reasonable inferences therefrom establish that the standard of care in North Platte and similar communities requires health care providers to obtain informed consent before performing surgery on a particular part of a patient's anatomy. The requirement for obtaining a patient's informed consent includes the duty to obtain his or her express or implied consent to the surgery. In this case, the applicable standard of care required Shreck to obtain Walls' express or implied consent to perform surgery on his right eye. Walls claims he refused to give such consent. The facts are not such that reasonable minds can draw but one conclusion as to whether Shreck deviated from the standard of care in North Platte when he operated on Walls' right eye.

For the reasons set forth herein, the judgment of the trial court is reversed and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.