LOUIS K. LIVINGSTON, APPELLANT, V. METROPOLITAN UTILITIES
DISTRICT, A MUNICIPAL CORPORATION, AND MUTUAL OF
OMAHA INSURANCE COMPANY, APPELLEES.

· 692 N.W.2d 475

Filed February 11, 2005.   No. S-02-310.

Howard Kaiman and Edward W. Hasenjager for appellant.

Tijiuana R. Smith-Secret and A. Justin Cooper for appellee
Metropolitan Utilities District.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, MCCORMACK,
and MILLER-LERMAN, JJ.

MCCORMACK, J.
## NATURE OF CASE
Louis K. Livingston brought a declaratory judgment action
seeking a determination of the rights, duties, and obligations of
the parties relating to his claim for lifetime long-term disability

(LTD) benefits pursuant to a policy of insurance issued by his former employer, Metropolitan Utilities District (MUD). At the conclusion of Livingston's case in chief, the district court granted a motion for directed verdict in favor of MUD. The district court subsequently denied Livingston's motion for new trial. Livingston appeals.

## BACKGROUND

Livingston began employment with MUD on December 1, 1964. At trial, Livingston testified that he applied for the job with MUD in 1964. He claimed that MUD told him that the board of directors of MUD would be approving a lifetime LTD program the following year. Livingston testified that as a result of an automobile accident in 1963, he and his wife both sustained injuries. The prospect of becoming eligible for such a policy with a lifetime benefit, therefore, played a significant role in his decision to accept employment with MUD. Livingston also testified that he turned down another job offer for the reason that MUD offered better overall compensation and that the benefits package included the lifetime LTD plan.

In December 1965, Livingston became eligible for and enrolled in MUD's LTD plan. The 1965 LTD policy provided in relevant part:

> **Benefit for Loss of Time During Total Disability Due to Sickness or Accidental Bodily Injury**—If total disability of a protected person due to sickness or accidental bodily injury commences while the protected person is insured under the policy and is under the regular care and attendance of a legally qualified physician, and the protected person remains continuously so totally disabled throughout a duration equal to the Elimination Period, the Company will pay to the protected person the Monthly Income Benefit applicable to the protected person in accordance with the Plan of Insurance for each month . . . throughout which such total disability continues beyond the applicable Elimination Period, but not beyond the Benefit Expiration Date specified in the Plan of Insurance.

The policy defines "Benefit Expiration Date" as the "Lifetime of the protected person."

On June 17, 1991, Livingston became disabled and unable to work and received biweekly accident and sickness benefits from MUD. On or around June 5, 1992, Livingston received and read a certified letter from MUD stating that effective June 22, his accident and sickness benefits from and employment with MUD would end. The letter gave Livingston the option of applying for LTD benefits through its LTD carrier, retiring from MUD, or becoming a vested term employee under MUD's pension plan. Selecting the first option, Livingston, who was 59 years old at the time, applied for and was placed on LTD in July 1992 and began receiving a disability benefit of $2,023.93 per month. Notwithstanding his continuing disability, Livingston's LTD benefits terminated on April 13, 1998, his 65th birthday.

Livingston brought suit against MUD and the LTD carrier. He contended that he was entitled to lifetime LTD benefits as promised to him by MUD in 1964 and as provided in the LTD policy in effect in 1965 when he enrolled in the plan.

At trial, MUD argued that revisions were made to MUD's LTD policy between 1965 and 1992 and that those revisions were applicable to Livingston. The human resources manager for MUD, John Hemschemeyer, testified for MUD regarding a revision to the LTD policy effective September 1, 1967. Hemschemeyer testified that under the 1967 LTD policy, benefits expired when covered persons reach age 65. Hemschemeyer noted that there was no lifetime benefits language in the 1967 LTD policy. The 1967 policy was not offered into evidence.

Offered and received into evidence was a notice to all MUD employees from the compensation and benefits administrator dated November 30, 1979. The 1979 notice stated that the board of directors passed a resolution amending the LTD contract in several respects, but left in place the provision terminating benefits at age 65 for active employees who sustain total disability before age 60. Livingston acknowledged that if the 1979 notice was posted on an MUD office bulletin board, then he had seen it.

Hemschemeyer further testified regarding a revised LTD policy effective in 1989. Hemschemeyer testified that the 1989 policy provided a maximum benefits period extending to age 65 for covered persons sustaining total disability prior to age 60. Livingston testified that he received, but apparently did not read,

a copy of the 1989 insurance policy booklet setting forth the above-described provisions. The 1989 policy was offered and admitted into evidence.

At the close of Livingston's case in chief, MUD moved for a directed verdict, which the district court granted. The court found that the 1965 LTD policy was not ambiguous and that as a matter of law, the LTD benefits Livingston received were those guaranteed by the provision in the 1965 policy for benefits after age 65. The district court found that MUD made both the company's and Livingston's contributions to his retirement plan while he was on disability leave as required by the 1965 policy. The court further found that as a matter of law, MUD had the right to change its LTD policy as long as notice of the change was provided to employees. The court found that in this case, Livingston received sufficient notice of any purported change to the 1965 policy. Livingston filed a motion for new trial, which the district court denied. Livingston appeals. We moved the case to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Livingston assigns, renumbered and restated, that the district court erred in (1) finding that MUD had the right to change or modify the 1965 LTD policy; (2) finding that the 1965 LTD policy was not ambiguous and that it provided him with the same benefits he was currently receiving; (3) excluding from evidence photographs of Livingston's wife taken in the summer of 1963, showing injuries she sustained in an automobile accident; (4) receiving into evidence the June 5, 1992, letter from MUD; (5) allowing MUD to cross-examine beyond the scope of the pleadings, thereby allowing MUD to raise an affirmative defense not pled in its operative answer; (6) allowing MUD to cross-examine Hemschemeyer beyond the scope of direct examination; (7) participating in the cross-examination of Hemschemeyer beyond the scope of direct examination; and (8) making its ruling in reliance on certain testimony of Hemschemeyer.

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission

of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Saberzadeh v. Shaw*, 266 Neb. 196, 663 N.W.2d 612 (2003); *Walls v. Shreck*, 265 Neb. 683, 658 N.W.2d 686 (2003).

A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, when an issue should be decided as a matter of law. *Williams v. Allstate Indemnity Co.*, 266 Neb. 794, 669 N.W.2d 455 (2003); *Kinney v. H.P. Smith Ford*, 266 Neb. 591, 667 N.W.2d 529 (2003).

## ANALYSIS

### MUD's Ability to Modify LTD Policy

In his first assignment of error, Livingston argues that the district court erred in concluding that MUD had the right to modify the 1965 LTD policy. In support of his position, Livingston relies on *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982), and *Miller v. City of Omaha*, 260 Neb. 507, 618 N.W.2d 628 (2000). Both *Halpin* and *Miller* were decided under the Contracts Clause of the U.S. Constitution; thus, we interpret Livingston's first assignment of error as arguing that MUD's modification of the LTD policy was a violation of that clause.

Livingston's claim essentially argues that at the time he was offered and accepted employment with MUD, he was promised that he would have the option to obtain lifetime LTD coverage. He claims that he relied upon that promise in accepting employment with MUD and that he, in fact, applied for lifetime LTD coverage as soon as he was eligible. Livingston argues that his contractual rights were interfered with when MUD eliminated the portion of the LTD coverage which provided for lifetime benefits. In response, MUD argues that Livingston's reliance on the 1965 LTD policy was not reasonable and that Livingston suffered no detriment as a result of his reliance. MUD further argues that it had the right to modify the policy and that it provided sufficient notice to Livingston that modifications had been made.

Livingston's claim presents three issues: (1) whether the LTD policy at issue is akin to a pension or deferred compensation such that Livingston had a contractual right for the purposes of the Contracts Clause; (2) if Livingston did have such a right, then when did this right vest; and (3) whether MUD's modification violated the Contracts Clause.

We first turn to the issue of whether the LTD policy at issue is a pension. In *Halpin*, which Livingston cites in support of his argument that his contractual rights were unconstitutionally modified, we held that Nebraska has long recognized that pensions are not gratuities. In *Halpin*, the court held that a pension plan offered to officers of the Nebraska State Patrol was not a gratuity, but instead was "deferred compensation, earned in exchange for services rendered [and creates] in the employees reasonable expectations entitled to legal protection." *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. at 898, 320 N.W.2d at 914. As a result of the finding that the plaintiffs had expectations in the pension plan entitled to legal protection, this court went on to conduct a Contracts Clause analysis. In doing so, we concluded that the State Patrol's modification of the plaintiffs' pensions unconstitutionally interfered with the plaintiffs' contractual rights.

In *Calabro v. City of Omaha*, 247 Neb. 955, 531 N.W.2d 541 (1995), this court was asked to determine whether a supplemental cost-of-living benefit offered by the city to its firefighters was a pension. In concluding that it was a pension, we noted that "the benefits were fixed when conferred, and only the *payment* of those benefits was deferred to a later date." (Emphasis in original.) *Id.* at 963, 531 N.W.2d at 548. In response to the city's argument that the supplemental benefit plan was not a pension but a gift, we noted further that

> if the city wanted to classify the supplemental benefit as a gift, it could have stated such in the ordinance enacting the supplemental benefit. Nothing in the enacting ordinance puts employees or potential employees on notice that the supplemental benefit could be taken away with the stroke of a pen. . . .
>
> . . . We find that due to the lack of information from which an employee could ascertain that the supplemental benefit plan was a mere gratuity from the city, the city treated the

supplemental benefit plan like a pension. As noted above, if the city wanted to limit the scope of the supplemental benefit plan to that of a mere gratuity, it could have plainly stated so in the enacting ordinance.

*Id.* at 963-64, 531 N.W.2d at 548-49.

■ Deferred compensation, again, is defined as compensation which is earned in exchange for services rendered. See, *Calabro v. City of Omaha, supra*; *Halpin v. Nebraska State Patrolmen's Retirement System*, 211 Neb. 892, 320 N.W.2d 910 (1982). Unlike the pension plan in *Halpin* and the supplemental benefit plan in *Calabro*, the LTD policy at issue does not meet this definition. Enrollment in this LTD plan was purely voluntary on the part of MUD employees. The accrual of coverage under this policy was not contingent upon the rendering of services, but instead depended upon the payment of premiums and the occurrence of an injury. We determine that the LTD policy in this case is not a pension.

Further supporting our conclusion that the LTD plan is not a pension is Neb. Rev. Stat. § 14-1022 (Reissue 1962) (now codified at Neb. Rev. Stat. § 14-2111 (Cum. Supp. 2004)). That section provides, in relevant part:

> The board of directors of any metropolitan water or metropolitan utilities district *may* also provide benefits for, insurance of, and annuities for the present and future employees and appointees of the district covering accident, disease, death, total and permanent disability, and retirement, *all or any of them, under such terms and conditions as the board may deem proper and expedient from time to time.*

(Emphasis supplied.) § 14-2111(1). This section has remained substantively unchanged from 1962 to the present.

■ Generally, the word "may" when used in a statute will be given its ordinary, permissive, and discretionary meaning unless it would manifestly defeat the statutory objective. When the word "may" appears, permissive or discretionary action is presumed. *Spaghetti Ltd. Partnership v. Wolfe*, 264 Neb. 365, 647 N.W.2d 615 (2002). Thus we conclude that the use of the word "may" in this statute implies that the MUD board of directors has discretion with regard to whether any LTD plan is implemented. We further conclude that the use of the word "may," as well as the phrase "as

the board may deem proper and expedient from time to time," gives the board the discretion to modify those terms of employment enumerated in the statute, should the board see fit to do so.

Also relevant when analyzing the impact of former § 14-1022 is *Calabro v. City of Omaha*, 247 Neb. 955, 531 N.W.2d 541 (1995). There, this court noted that the supplemental benefit plan was a pension and not a gratuity due in part to the lack of language in the enacting ordinance informing "employees or potential employees . . . that the supplemental benefit could be taken away with the stroke of a pen." *Id.* at 963, 531 N.W.2d at 548. The language required by *Calabro* regarding notice to employees and potential employees was provided by § 14-1022, which stated that a board of directors may provide benefits "under such terms and conditions as the board may deem proper and expedient from time to time." Thus, the board of directors retained the discretion to modify the terms of MUD's LTD coverage.

Having found that the LTD policy at issue was not a pension or deferred compensation, we conclude that Livingston had no contractual right in that policy for Contracts Clause purposes. For the sake of completeness, we note that *Omer v. Tagg*, 235 Neb. 527, 455 N.W.2d 815 (1990), appears to hold, with little analysis, that health insurance is akin to deferred compensation. To the extent that *Omer* is inconsistent with this opinion, it is disapproved.

Given the above conclusion, we need not undertake a Contracts Clause analysis in determining whether MUD unconstitutionally impaired Livingston's contractual rights. Such a conclusion does not end our inquiry, however. We must still determine whether MUD was otherwise prohibited from modifying the terms of the LTD policy.

As noted above, § 14-1022 (now codified at § 14-2111) provided that the MUD board may provide disability insurance to its employees and that the terms and conditions of such insurance may be set and modified by the board as the board deems proper. A review of the record shows that such terms and conditions were modified periodically throughout Livingston's employment, including, significantly, the elimination of the lifetime LTD benefits. We conclude that MUD was within its statutory authority in modifying the terms of the LTD policy it offered to its employees.

The district court did not err in finding that MUD had the right to modify the 1965 policy. Livingston's first assignment of error is without merit.

### POLICY AMBIGUITY

In his second assignment of error, Livingston argues that the district court erred in finding that the 1965 LTD policy was not ambiguous and that it provided him with the same benefits he was currently receiving.

█ Having concluded that MUD had the authority to modify the LTD policy at issue, any change in Livingston's benefits was permissible. We need not, therefore, decide whether the 1965 policy benefits would be the same as Livingston's current benefits. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Anderson v. Bellino*, 265 Neb. 577, 658 N.W.2d 645 (2003).

### EXCLUSION OF PHOTOGRAPHS

In his third assignment of error, Livingston argues that the district court erred in not admitting certain photographs taken of his wife following a 1963 automobile accident. Livingston argues that these photographs help establish his credibility with respect to his wife's injuries as being foremost in his mind when he accepted MUD's offer of employment.

█ The district court refused to admit the photographs of Livingston's wife taken following the 1963 accident. At trial, however, Livingston was permitted to testify regarding that accident; he testified that his wife suffered injuries and that MUD's LTD benefits policy was a significant factor in his decision to accept MUD's offer of employment. Furthermore, Livingston's wife was also permitted to testify regarding the accident and the fact that she suffered injuries in that accident. We also note that our review of the record indicates that MUD presented no evidence or testimony which tended to call Livingston's credibility on the issue of his wife's injuries or his desire for LTD benefits into question. An improper exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection. *Crete Ed. Assn. v. Saline Cty. Sch. Dist. No. 76-0002*, 265 Neb. 8, 654 N.W.2d 166 (2002). As a result, we conclude that even if the district court erred in the exclusion of the photographs, an issue we

do not decide, said error is without prejudice. Livingston's third assignment of error, therefore, is without merit.

REMAINING ASSIGNMENTS OF ERROR

■ Livingston assigns five additional errors. In his brief, Livingston fails to raise or argue assignments of error Nos. 4 and 5. Errors that are assigned but not argued will not be addressed by an appellate court. *State ex rel. City of Alma v. Furnas Cty. Farms*, 266 Neb. 558, 667 N.W.2d 512 (2003). With respect to assignments of error Nos. 6 through 8, Livingston's argument consists of a few sentences which, in essence, restate Livingston's assignment of error with respect to that particular issue. These statements do not constitute the required argument in support of the assigned error. See *State ex rel. City of Alma v. Furnas Cty. Farms, supra.* We conclude that assignments of error Nos. 4 through 8 are without merit.

CONCLUSION

We determine that the court did not err in concluding that MUD had the ability to modify the LTD policy at issue. For the reasons set forth above, we conclude that the decision of the district court should be affirmed.

AFFIRMED.

STEPHAN, J., not participating.