ESTHER WILLIAMS, APPELLANT, AND ELIJAH WILLIAMS, APPELLEE, V. ALLSTATE INDEMNITY COMPANY, APPELLEE.

669 N.W.2d 455

Filed October 3, 2003. No. S-02-283.

James A. Adams, of Adams & Adams, for appellant.

Waldine H. Olson, of Nolan, Olson, Hansen, Fieber & Lautenbaugh, L.L.P., for appellee Allstate Indemnity Company.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

After a fire, the appellant, Esther Williams, sought damages from appellee, Allstate Indemnity Company (Allstate), for breach of contract and bad faith concerning its handling of her claims. Part of the bad faith claim included an allegation that Paul Davis Systems (PDS), the contractor who performed repairs on her home, was an agent of Allstate. The district court granted Allstate's motion for a directed verdict on the bad faith claim and found that the contractor was not an agent of Allstate. The jury found for Williams on the breach of contract claim. The court overruled Williams' motion for a new trial on her bad faith claim, and she appeals. Because we determine that Williams failed to show that Allstate lacked a reasonable basis for its actions and that PDS was not an agent or employee of Allstate, we affirm.

## BACKGROUND

After a November 1997 fire at her home, Williams and her husband, who died during the pendency of this action, filed a claim with Allstate. The damage rendered the house uninhabitable, and Williams resided elsewhere until August 1998.

Williams' first choice for a contractor was Hicks Construction (Hicks), and she contends that Hicks could have done the job. However, David Kulm, a former project manager at Hicks, testified that Hicks was not equipped to do the type of work required and would have had to hire subcontractors, which would have incurred additional costs. Allstate was not willing to approve the contract under those circumstances. Kulm stated that Allstate's position was not unreasonable.

PDS was recommended by Allstate, and Williams hired it as the contractor. Williams, however, states that she did not want PDS to do the work. She testified that Allstate suspended payments for living expenses until she chose a contractor. Because she had not found another contractor, she believed that she did not have any choice except to choose PDS. She stated she had been looking for another contractor, but admitted that she had not found one a month after the fire. Williams believed she should have been allowed more time to find an alternate contractor or hire Hicks.

PDS is a preferred provider in the Allstate qualified vendor program. Preferred providers apply with Allstate for the designation, and Allstate performs a background check of the vendor. Under the program, Allstate will recommend PDS as a contractor and PDS will warrant its work. Allstate also guarantees the work of the contractors in the program. If a preferred provider fails to perform a quality job, it is removed from the program.

Before a contract is signed, PDS works closely with the insurance company. But after a contract is signed, it works more closely with the insured homeowner. Allstate does not directly pay the contractor. Instead, Allstate issues checks to the homeowner that are payable to both the homeowner and the contractor. Allstate did not exercise any control over PDS employees, dictate who could be hired as a subcontractor, or supervise the day-to-day work at Williams' house.

Michael Hytrek was the project manager for PDS. After the fire, an adjuster at Allstate contacted Hytrek to do a walk-through of the home and give an estimate. Hytrek stated that he did not want the job, but took it with some reluctance when Allstate asked him to, because Williams could not find a contractor. When Hytrek began receiving complaints from Williams, he communicated this to Allstate.

From the beginning, Williams and PDS had disagreements about the repairs and how they were to be done. The record contains a litany of complaints, including some items that were not part of the repair contract with PDS. The parties also disagree about whether some of the complaints were problems caused by PDS or were preexisting problems in the house. According to Hytrek, at the request of Allstate, PDS did some repair work that was not covered under the contract to "appease" Williams.

The house was declared livable by Allstate in early July 1998. Williams, however, refused to disburse money to PDS until the problems were resolved. When Allstate provided Williams with checks, she refused to endorse them. As a result, PDS did not return personal property that had been removed from the house as part of the cleaning and repair process. Williams did not move back into the house until August and experienced difficulties living without her personal property. The president of PDS admitted that the contract did not specifically authorize PDS to withhold personal property because of nonpayment.

According to PDS, Williams was also insisting that PDS finish various repairs required under the warranty before she would move back into the house. Because of nonpayment, some items covered under the PDS warranty were never completed. PDS brought suit against Williams to recover money due for the services rendered at the house, and Williams filed a cross-claim. In February 1999, the parties reached an agreement for partial payment and PDS returned Williams' property. A jury later awarded $6,922.40 to PDS and $3,500 to Williams. See *Paul Davis Sys. of Omaha v. Williams*, No. A-00-895, 2002 WL 205950 (Neb. App. Feb. 12, 2002) (not designated for permanent publication).

Williams also had disagreements with Allstate about whether items in the house needed to be completely replaced and about painting the exterior. In addition, Williams refused to accept a

$7,000 check from Allstate for items she replaced because Allstate did not specifically state the items it was covering in the check.

According to Williams, she was owed reimbursement for some damaged items and Allstate canceled a scheduled meeting to discuss the matter. Williams also complains that she was told by Allstate that her daughter would not be allowed to attend the meeting. The record, however, shows that representatives of Allstate had difficulty getting along with her daughter but that she ultimately was allowed to attend the meeting.

Williams testified that she did not receive a reimbursement check until June 2001 and that Allstate said it "forgot" about it. Williams admitted, however, that she did not finish going through boxes of damaged items until late 2000. The record also shows that after Williams finished, Allstate met with her, and that she accepted a check for partial payment. The remainder was paid later, and Williams received the check several weeks late because of an oversight by Allstate's attorney. The record shows Williams sent numerous letters complaining about how her claim was handled. Allstate moved for a directed verdict on all claims. The district court overruled the motion on the breach of contract claim but granted the motion on the bad faith claim. The court held that bad faith must be intentional and that Williams did not show an absence of a reasonable basis for Allstate to deny benefits under the policy. The jury awarded Williams $5,400 on her breach of contract claim. Williams filed a motion for a new trial, arguing that PDS was an agent of Allstate and that the court erred when it dismissed the bad faith cause of action. The court overruled the motion, and Williams appeals.

## ASSIGNMENTS OF ERROR

Williams assigns that the district court erred by (1) directing a verdict for Allstate on the bad faith claim and (2) determining that PDS was not an agent of Allstate as a matter of law.

## STANDARD OF REVIEW

A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, when an issue

should be decided as a matter of law. *Kinney v. H.P. Smith Ford, ante* p. 591, 667 N.W.2d 529 (2003).

## ANALYSIS

Williams contends that the district court erred when it directed a verdict on her bad faith claim. She argues that Allstate acted in bad faith when it (1) cut off or threatened to cut off her living expense allowance, (2) communicated with Hicks to deter Hicks from submitting a bid, (3) failed to respond to her complaints in a reasonable manner, (4) missed meetings and demanded that her daughter not attend a meeting, (5) delayed processing claims in April 1999 and May 2000, (6) used a poorly defined process of reimbursement for personal items, and (7) failed to see that the house was painted properly or that items were repaired.

To establish a claim for bad faith, a plaintiff must show an absence of a reasonable basis for denying the benefits of the insurance policy and the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320 (1998). We have recognized the holdings in other jurisdictions that an insurance company has a right to debate a claim that is "fairly debatable," or subject to a reasonable dispute, without being subject to a bad faith claim. *Id.* at 230, 583 N.W.2d at 325, citing *Morgan v. American Family Mutual Ins. Co.*, 534 N.W.2d 92 (Iowa 1995). Whether a claim is subject to a reasonable dispute is appropriately decided by the court as a matter of law. *Radecki v. Mutual of Omaha Ins. Co., supra.* The determination is based on the information available to the insurance company at the time the demand is presented. *Id.*

Here, Williams has failed to show the absence of a reasonable basis for Allstate's actions. Williams' claims of bad faith are as follows:

(1) Williams' living expense allowance was cut off. Williams, however, did not timely hire a contractor, making it reasonable for Allstate to refuse to pay the allowance until a contractor was hired. Although Williams argues that she should have had more time to arrange to hire another contractor, the record shows that the contractor of her choice could not personally perform the job. It is not unreasonable for an insurance company to be

concerned about continuing to pay a living expense allowance when the insured is not timely arranging to have the home repaired. Reasonable minds could differ on whether Williams could have more quickly found a contractor. Accordingly, Williams has failed to show the lack of a reasonable basis for Allstate's actions.

(2) Allstate acted in bad faith when it communicated with Hicks. We disagree. The record shows that Allstate informed Hicks that a bid from it would not likely be accepted because Hicks would have to hire subcontractors. Hicks agreed that Allstate's position was reasonable. We conclude that Allstate acted reasonably in communicating its concerns to Hicks.

(3) Allstate failed to respond to her complaints in a reasonable manner. The record shows that Allstate responded to Williams' complaints and attempted to work with Williams and PDS to solve the problems. It was reasonable for Allstate to expect Williams to initially raise concerns with PDS instead of through Allstate.

(4) There were complaints about missed meetings and a demand by Allstate that her daughter not attend a meeting. But the record shows that meetings were canceled when Williams had not finished going through all of her personal property. The record also indicates that representatives of Allstate had difficulty getting along with her daughter but that she ultimately was allowed to attend the meeting. Under these circumstances, Williams has failed to show that Allstate's actions were unreasonable.

(5) Allstate delayed the processing of her claims in April 1999 and May 2000. The record shows, however, that the claims were delayed in part because of Williams' failure to finish sorting her personal property. The record shows that a further delay was accidental because of an oversight by Allstate's attorney. Under these circumstances, we conclude Williams has not shown that Allstate was unreasonable in handling the claims.

We have reviewed Williams' remaining complaints, including repairs and Allstate's reimbursement policies, and find no merit. We determine that Williams has failed to show the absence of a reasonable basis for Allstate's denial of benefits.

Williams next argues, however, that PDS was an employee or agent of Allstate who acted in bad faith and that Allstate is

liable for PDS' actions. We determine that PDS was not an agent of Allstate.

Ordinarily, a party's status as an employee or an independent contractor is a question of fact. However, where the facts are not in dispute and where the inference is clear that there is, or is not, a master and servant relationship, the matter is a question of law. *Keller v. Tavarone*, 262 Neb. 2, 628 N.W.2d 222 (2001). By stating "where the inference is clear," this court means that there can be no dispute as to facts pertaining to the contract and the relationship of the parties involved and that only one reasonable inference can be drawn therefrom. *Id.*

No single test exists for determining whether one performs services for another as an employee or as an independent contractor, and the following factors must be considered: (1) the extent of control which, by the agreement, the employer may exercise over the details of the work; (2) whether the one employed is engaged in a distinct occupation or business; (3) the type of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the one employed supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the one employed is engaged; (7) the method of payment, whether by the time or by the job; (8) whether the work is part of the regular business of the employer; (9) whether the parties believe they are creating an agency relationship; and (10) whether the employer is or is not in business. *Id.* While no one factor is determinative, control is the most important factor to be considered in determining whether someone is an employee or independent contractor. *Omaha World-Herald v. Dernier*, 253 Neb. 215, 570 N.W.2d 508 (1997).

Here, the undisputed facts show that Allstate did not exercise control over how PDS performed its work. PDS is a distinct business that is not controlled by Allstate. Obviously PDS, a building contractor, uses different skills and know-how than does Allstate, an indemnity company. Nothing in the record indicates that Allstate supplied PDS with equipment or tools. PDS was hired by Williams, not by Allstate, and was not paid directly by Allstate.

Although PDS was part of Allstate's qualified vendor program, an insured is not required to select a contractor from the program, and nothing in the record indicates that the program was intended to create an agency relationship.

Here, the inference is clear that there was not a master and servant relationship between Allstate and PDS. Accordingly, we conclude that PDS was not an employee or agent of Allstate as a matter of law. Because PDS was not an employee or agent, we do not address whether its actions were in bad faith.

### CONCLUSION
We determine that Williams has failed to show that Allstate lacked a reasonable basis for its actions. We further determine that PDS was not an employee or agent of Allstate. The district court correctly directed a verdict for Allstate on the bad faith claim. Accordingly, we affirm.

AFFIRMED.