DAVID L. LERETTE, JR., AND MARY J. LERETTE, HUSBAND AND WIFE, APPELLEES AND CROSS-APPELLANTS, V. AMERICAN MEDICAL SECURITY, INC., A WISCONSIN CORPORATION, AND UNITED WISCONSIN LIFE INSURANCE COMPANY, A WISCONSIN CORPORATION, APPELLANTS AND CROSS-APPELLEES.

705 N.W.2d 44

Filed October 28, 2005.    No. S-04-724.

S.P. DeVolder, of DeVolder Law Firm, and Dennis J. Green for appellants.

Sandra L. Maass, of Abrahams, Kaslow & Cassman, L.L.P., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## I. NATURE OF CASE

David L. LeRette, Jr., and Mary J. LeRette filed a petition against American Medical Security, Inc., and United Wisconsin Life Insurance Company (collectively United Wisconsin). The action was tried in the district court for Douglas County, and two causes of action were submitted to a jury: one for breach of an insurance contract, and one for bad faith. The jury found for United Wisconsin on the breach of contract claim but found in favor of the LeRettes in the amount of $25,000 on the bad faith claim. The court entered judgment accordingly. Following entry

of judgment on the bad faith verdict, United Wisconsin filed a motion to set aside the verdict or, in the alternative, for new trial or entry of an altered or amended judgment. The motion was denied. The court also denied a request for attorney fees filed by the LeRettes pursuant to Neb. Rev. Stat. § 44-359 (Reissue 2004). United Wisconsin appeals, and the LeRettes cross-appeal. We find merit in United Wisconsin's appeal and reverse the judgment on the bad faith claim and remand the cause with directions to dismiss the bad faith claim. In view of our decision, we do not consider the LeRettes' cross-appeal.

## II. STATEMENT OF FACTS

The LeRettes completed an application for health insurance from United Wisconsin on December 12, 2000. United Wisconsin issued a health insurance policy to the LeRettes and their minor children effective January 15, 2001. At the time the policy became effective, Mary was 27 years old. Shortly after the policy was issued, Mary began to submit medical bills to United Wisconsin for treatments she was undergoing for chronic pelvic pain. Mary's condition had not been disclosed in the LeRettes' health insurance application. Prompted by such bills, United Wisconsin on April 12 began a review of Mary's medical history. Mary continued to receive treatment, and following an exploratory procedure, Mary opted for a total hysterectomy to permanently alleviate her symptoms.

Pursuant to the policy, on June 14, 2001, United Wisconsin received a request from Mary's treating physician to precertify insurance benefits for the hysterectomy which was scheduled for June 18. In response, United Wisconsin asked Dr. Paul Goldstein, a doctor who was board certified in obstetrics and gynecology, to review Mary's medical records and form an opinion on medical necessity. In a letter dated June 18, 2001, Dr. Goldstein noted that Mary was 27 years of age with a 2-year history of symptoms and opined that the hysterectomy was not shown to be medically necessary and would not be appropriate until more conservative treatment regimes had been attempted and a more detailed workup had been performed to identify the cause of the condition. On the basis of Dr. Goldstein's opinion, United Wisconsin denied the precertification request.

The policy issued by United Wisconsin provided for an internal claim appeal procedure. Under the policy, if the insured disagreed with a decision made on a claim, the insured could request a review of the initial claim denial. United Wisconsin would then review the denial and notify the insured of its decision. The policy provided that the insured would normally be notified of the decision within 60 days of the request but that special circumstances might require up to 120 days. If the insured was dissatisfied with the decision, the insured could request a second review by a special panel. Under the policy, the panel would review the prior decision and would normally notify the insured of its decision within 60 days, although special circumstances might require up to 120 days.

On June 20, 2001, Mary requested the first level of review. United Wisconsin asked a second doctor, Dr. Darwish Yusah, who was also board certified in obstetrics and gynecology, to review the file. On June 27, Dr. Yusah opined that the precertification for the hysterectomy should be denied and that other treatments should be attempted before resorting to a hysterectomy. United Wisconsin therefore upheld the denial. Thereafter, the LeRettes retained legal counsel, and on July 23, through their legal counsel, requested a review by a special panel.

In other developments, based on discoveries made during its review of Mary's medical history, on July 25, 2001, United Wisconsin requested that Mary sign exclusionary riders related to asthma and ovarian cysts. The LeRettes requested a first-level review of the decision to request the riders. As part of the review related to the riders, United Wisconsin provided records to Dr. Alan Cameron, a doctor certified in family practice but not certified in obstetrics and gynecology. Following his review, Dr. Cameron noted that the record was unclear whether Mary had been treated for the asthma and cyst conditions within the 1-year preexisting conditions exclusionary period set forth in the policy. Dr. Cameron therefore recommended that United Wisconsin withdraw the request for such riders, and based on such recommendation, the request for the riders was dropped.

Although the hysterectomy precertification issue was evidently beyond the scope of the review United Wisconsin had requested, United Wisconsin had provided information regarding

the issue to Dr. Cameron. Thus, as an incident to his response dated August 31, 2001, Dr. Cameron opined on the issue. Dr. Cameron agreed with Drs. Goldstein and Yusah that further testing might be appropriate under all the circumstances and that the hysterectomy might not be medically necessary. However, Dr. Cameron recommended that precertification be granted because further testing followed by an eventual hysterectomy would be more costly.

The appeal panel considered Dr. Cameron's recommendation with regard to the hysterectomy precertification issue and accepted his recommendation in favor of the insured's position. On September 11, 2001, United Wisconsin reversed its denial and granted Mary's request for precertification. Further, upon completion of the medical history review on September 18, United Wisconsin informed the LeRettes and their medical service providers that it was lifting the hold it had placed on payment of medical bills, and United Wisconsin thereafter paid such bills. Mary had the hysterectomy surgery on October 12, 4 months after her initial request for precertification.

On October 21, 2002, the LeRettes filed the present action against United Wisconsin. By the time of trial, the petition consisted of two causes of action: breach of contract and bad faith. Prior to trial, on February 27, 2004, pursuant to United Wisconsin's motion for summary judgment, the district court had dismissed additional claims of intentional infliction of emotional distress and loss of parental consortium. This ruling is not at issue on appeal.

The case was tried to a jury on March 22 through 25, 2004. At trial, the LeRettes claimed that United Wisconsin had breached its contract by not timely paying all amounts due under the policy to medical providers and that there was an outstanding balance due of $940.13. With respect to the bad faith cause of action, the LeRettes objected to United Wisconsin's initial denial of benefits for Mary's hysterectomy and the manner with which it conducted the investigation in relation thereto. Certain other assertions of bad faith regarding handling of David's claims were at issue, but were dismissed by directed verdict.

At trial, after the LeRettes rested their case, United Wisconsin moved for directed verdict. The court denied the motion, and

United Wisconsin presented its defense. After the defense rested, the court announced that it was "reversing" its prior decision on the motion for directed verdict. The court then granted directed verdict in favor of United Wisconsin to the extent that the LeRettes were presenting a bad faith claim relating to insurance claims that had been made by David. The court thus dismissed the bad faith claim as to David, and this ruling is not challenged on appeal. United Wisconsin renewed its motion for directed verdict as to the remainder of the case. The court denied the renewed motion. The cause of action for breach of contract related to untimely paid and outstanding bills and the cause of action for bad faith related to initial denials of precertification for Mary's hysterectomy were submitted to the jury. The jury returned a verdict for United Wisconsin on the breach of contract claim and a verdict for Mary on the bad faith claim in the amount of $25,000. The verdict in favor of United Wisconsin on the breach of contract claim is not challenged on appeal by any party. The court entered judgment on the verdict on the bad faith claim on March 26, 2004.

On April 2, 2004, United Wisconsin filed a motion to set aside the verdict and judgment on the bad faith claim or, in the alternative, for new trial or an altered or amended judgment on the bad faith claim. In support of the motion, United Wisconsin argued that it was entitled to judgment in its favor on the bad faith claim because, inter alia: (1) the jury verdict in favor of United Wisconsin on the breach of contract cause of action precluded an award on the bad faith cause of action; (2) United Wisconsin had a right to rely on the opinions of doctors when it denied precertification for Mary, and it therefore should not be subject to a claim of bad faith based on such initial denials; (3) United Wisconsin ultimately paid the claim for benefits asserted by Mary; (4) United Wisconsin did not commit any act of bad faith; and (5) the LeRettes did not establish any damages. United Wisconsin also took issue with certain jury instructions. The court rejected each of United Wisconsin's arguments and overruled the motion on May 19.

On April 6, 2004, the LeRettes filed an application for reimbursement of attorney fees pursuant to § 44-359 which provides

that in "an action upon any type of insurance policy" the court "shall allow the plaintiff a reasonable sum as an attorney's fee." On May 19, the court denied the LeRettes' application for attorney fees. The Court reasoned that the LeRettes' success on the cause of action for bad faith was an award on a tort claim and therefore their award was not achieved in "an action upon any type of insurance policy" for purposes of awarding attorney fees under § 44-359.

United Wisconsin appeals. The LeRettes cross-appeal.

## III. ASSIGNMENTS OF ERROR

In its appeal, United Wisconsin generally asserts that the district court erred in denying its motions for directed verdict and its motion to set aside the verdict or for new trial or entry of an altered or amended judgment. Specifically, United Wisconsin claims that the court erred in denying its motion for directed verdict related to Mary's bad faith claim and further erred in entering judgment on the jury's verdict in favor of Mary on the bad faith claim. United Wisconsin further asserts, inter alia, that the court erred in entering judgment on the bad faith claim because (1) the jury had failed to find for the LeRettes on the breach of contract cause of action relating to untimely paid and unpaid medical bills, (2) United Wisconsin had the right to rely on the opinions of medical experts in initially denying the precertification request for Mary's hysterectomy, (3) United Wisconsin did not ultimately deny benefits to Mary for her hysterectomy, and (4) there was insufficient evidence to submit Mary's bad faith claim to the jury and insufficient evidence to support the jury's verdict in favor of Mary on the bad faith claim concerning the initial denials related to her hysterectomy. United Wisconsin also argues that because the LeRettes misrepresented Mary's medical history in the application, the district court erred in failing to instruct the jury on the affirmative defense of misrepresentation by deceit or to direct a verdict on such basis.

In their cross-appeal, the LeRettes claim that the district court erred in concluding that § 44-359 did not apply to a bad faith claim and in denying their application for attorney fees under § 44-359.

## IV. STANDARDS OF REVIEW

■ In reviewing a trial court's ruling on a motion for directed verdict, an appellate court must treat the motion as an admission of the truth of all competent evidence submitted on behalf of the party against whom the motion is directed; such being the case, the party against whom the motion is directed is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Livingston v. Metropolitan Util. Dist.*, 269 Neb. 301, 692 N.W.2d 475 (2005).

■ A directed verdict is proper at the close of all the evidence only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is to say, when an issue should be decided as a matter of law. *Gerhold Concrete Co. v. St. Paul Fire & Marine Ins.*, 269 Neb. 692, 695 N.W.2d 665 (2005).

■ On a motion for judgment notwithstanding the verdict, the moving party is deemed to have admitted as true all the relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences deducible from the relevant evidence. *Parks v. Merrill, Lynch*, 268 Neb. 499, 684 N.W.2d 543 (2004). To sustain a motion for judgment notwithstanding the verdict, the court resolves the controversy as a matter of law and may do so only when the facts are such that reasonable minds can draw but one conclusion. *Id.*

## V. ANALYSIS

United Wisconsin generally asserts that the district court erred in denying its motion for directed verdict as to Mary's bad faith claim and in denying its motion to set aside the jury verdict with respect thereto. United Wisconsin makes various arguments in support of these assertions. We first address United Wisconsin's argument that the verdict on the bad faith claim in connection with the initial denials to precertify Mary's hysterectomy should be set aside because the jury failed to find a breach of contract concerning untimely paid and unpaid medical bills. We next address United Wisconsin's assertion that because it ultimately granted Mary's request for precertification for the hysterectomy surgery, Mary's bad faith claim in connection with the initial

denials must fail. Finally, we address whether the evidence presented by Mary on the bad faith claim was sufficient to submit to the jury. As explained more fully below, we conclude that Mary's evidence of bad faith was insufficient as a matter of law and that the district court erred in submitting such claim to the jury. Accordingly, we reverse.

## 1. NEBRASKA RECOGNIZES THE TORT OF FIRST-PARTY BAD FAITH IN CONNECTION WITH POLICIES OF INSURANCE

■ In *Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769 (1991), *disapproved on other grounds, Wortman v. Unger*, 254 Neb. 544, 578 N.W.2d 413 (1998), we recognized a tort of bad faith refusal to "settle" a claim with an insured policyholder. In connection with the tort of bad faith, we stated that "a first-party bad faith cause of action is based upon allegations that the insurer, in bad faith, refuses to settle with its own policyholder insured, who thereby suffers some type of direct loss." *Id.* at 54, 464 N.W.2d 776. In *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991), we noted that it is the breach of the covenant of good faith and fair dealing from which liability in the tort of bad faith springs. We have stated that in order to establish a claim for bad faith, a plaintiff must show an absence of a reasonable basis for denying the benefits of the insurance policy and the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Williams v. Allstate Indemnity Co.*, 266 Neb. 794, 669 N.W.2d 455 (2003); *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320 (1998).

(a) Breach of the Insurance Contract in Connection With
Untimely Paid and Unpaid Medical Bills Was Not a
Prerequisite to Prevailing on the Bad Faith Claim in
Connection With Initial Denials for Mary's Hysterectomy

As an initial matter, United Wisconsin argues that because the jury found in United Wisconsin's favor on the LeRettes' breach of contract cause of action, its verdict in favor of Mary on the bad faith claim cannot stand. Given the facts of this case, we reject United Wisconsin's argument.

The court has examined the cases, not repeated here, which the parties have cited on this issue. United Wisconsin asserts that

other courts have held that a breach of contract is a prerequisite to bringing a bad faith claim. United Wisconsin refers us to *State Farm Fire & Casualty Co. v. Slade*, 747 So. 2d 293 (Ala. 1999) (in order to recover on claim of bad faith failure to investigate, insured must show that insurer breached contract), and *Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627 (Tex. 1996) (in most circumstances, insured may not prevail on bad faith claim without first showing that insurer breached contract). However, other courts have held that an insured does not need to prevail on the breach of contract claim to prevail on the claim for bad faith. E.g., *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d 813 (Wyo. 1994). In cases such as each of the foregoing, the insured generally alleged that the same conduct by the insurer amounted to both a breach of contract and bad faith. Given the record in the instant case in which the core set of facts on the breach of contract cause of action and the core set of facts on the bad faith cause of action differ, the authorities on which the parties rely are inapposite.

In the case at hand, as submitted to the jury, the breach of contract claim was a cause of action separate and distinct from the bad faith cause of action. Although both causes of action unavoidably shared facts in common, the cause of action for the breach of contract was directed at United Wisconsin's alleged failure under the contract of insurance to pay or timely pay $940.13 in outstanding medical bills, several of which were incurred after Mary's hysterectomy, whereas the cause of action for bad faith was grounded in the fact that Mary had initially been denied precertification in connection with the hysterectomy. The causes of action in this case were separate and not dependent on each other. Therefore, contrary to United Wisconsin's assertion, the LeRettes were not required to prevail on their breach of contract cause of action relating to untimely paid and unpaid bills as a prerequisite to prevailing on the bad faith cause of action relating to initial denials in connection with Mary's hysterectomy.

### (b) Ultimate Payment of Benefit Does Not Preclude a Viable Bad Faith Claim

United Wisconsin argues that because it eventually granted Mary's request for precertification, there could be no claim for

bad faith because there was ultimately no denial of benefits. We conclude that the fact that United Wisconsin ultimately granted Mary's request for precertification did not as a matter of law preclude a viable bad faith claim.

■ In *State Farm Mut. Auto. Ins. Co. v. Shrader*, 882 P.2d at 828, the Wyoming Supreme Court noted that an implied covenant of good faith and fair dealing is present in every contract of insurance and stated that "the subsequent payment of a denied . . . claim does not absolve an insurer from compliance with the duty of good faith and fair dealing." We have recognized an implied covenant of good faith and fair dealing in medical insurance contracts. *Ruwe v. Farmers Mut. United Ins. Co.*, 238 Neb. 67, 469 N.W.2d 129 (1991). Further, in *Ruwe*, we implicitly recognized that a claim of bad faith can encompass a delay in the settlement of benefits. We therefore conclude that even if an insurance company ultimately grants a claim relating to the insured's benefits, a viable cause of action for bad faith can be based on initial denials.

Other courts are in agreement with our conclusion that ultimate payment of benefits does not preclude a bad faith claim. See *Best Place, Inc. v. Penn America Ins. Co.*, 82 Haw. 120, 920 P.2d 334 (1996) (tort of bad faith allows an insured to recover even if insurer performs express covenant to pay claims); *Rawlings v. Apodaca*, 151 Ariz. 149, 726 P.2d 565 (1986) (insurer's eventual performance of express covenant by paying claim does not release it from liability for bad faith; implied duty of good faith and fair dealing is breached when insurance company's conduct damages very protection or security which insured sought to gain by buying insurance). Accordingly, we reject United Wisconsin's argument asserting that its ultimate payment of benefits in this case precluded a judgment in favor of the LeRettes on the bad faith claim.

### 2. The Evidence Presented Was Insufficient to Support a Bad Faith Claim

We next consider whether the evidence presented by the LeRettes was sufficient to submit Mary's bad faith claim related to initial denials concerning her hysterectomy to the jury. As to this issue, we conclude that the evidence related to Mary's bad

faith claim was not sufficient to have been submitted to the jury and that the district court erred in denying United Wisconsin's motion for directed verdict addressing the entire bad faith cause of action. Accordingly, we reverse, and remand with directions to dismiss the bad faith claim.

In *Braesch v. Union Ins. Co.*, 237 Neb. 44, 57, 464 N.W.2d 769, 777 (1991), *disapproved on other grounds, Wortman v. Unger*, 254 Neb. 544, 578 N.W.2d 413 (1998), we first adopted the standard of care in bad faith claims as follows:

> "To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the [insurance] policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one. 'Bad faith' by definition cannot be unintentional."

Quoting *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978).

We repeated this standard and further discussed the requirements for a bad faith claim in *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320 (1998), and in *Williams v. Allstate Indemnity Co.*, 266 Neb. 794, 669 N.W.2d 455 (2003). In both *Radecki* and *Williams*, we affirmed the district court's grant of a directed verdict in favor of the insurer on bad faith claims. We stated in *Radecki* that "if a lawful basis for denial actually exists, the insurer, as a matter of law, cannot be held liable in an action based on the tort of bad faith." 255 Neb. at 229, 583 N.W.2d at 325. We further stated that it must be determined "whether, at the time of each denial, [the insurer] had an arguable basis on which to deny the claim" and if the insurer "had such a basis, [the insured's] bad faith cause of action fails as a matter of law regardless of the manner in which an investigation was or was not conducted." 255 Neb. at 230, 583 N.W.2d at 326. The question "[w]hether a claim is fairly debatable is appropriately decided by the court as a matter of law . . . and such a determination is based on the information available to the insurance company at the time the demand is presented." *Id.* Upon the record presented, we conclude that because United Wisconsin had an arguable basis on which to initially deny

precertification at the time of each such denial, the LeRettes' bad faith claim as to Mary's hysterectomy fails as a matter of law.

In the present case, United Wisconsin denied Mary's request for precertification on two occasions. Mary invoked the appeal process provided in the contract, and ultimately, United Wisconsin granted her request. In this regard, we note that the timeframe during which the appeals were conducted and concluded were within the timeframes set forth in the policy.

United Wisconsin initially denied Mary's request on the basis of Dr. Goldstein's opinion which concluded that the hysterectomy was not medically necessary. In his opinion, Dr. Goldstein noted Mary's age and concluded that the hysterectomy would not be appropriate until further treatment had been attempted and further testing had been done. United Wisconsin denied the request again based on the review by Dr. Yusah, who opined that precertification should be denied as not medically necessary and that other treatments should be attempted before resorting to a hysterectomy.

Although the LeRettes presented evidence that Mary's doctor recommended the hysterectomy, United Wisconsin was allowed to rely in good faith on its own experts' opinions rather than the opinion of the insured's expert. See *Morgan v. American Family Mut. Ins. Co.*, 534 N.W.2d 92 (Iowa 1995) (insurance company not obligated to disregard opinion of its own expert in favor of insured's expert's opinion), *overruled in part on other grounds, Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775 (Iowa 2000). Indeed, we have observed that " '[t]he insurer . . . must be accorded wide latitude in its ability to investigate claims . . . .' " *Braesch v. Union Ins. Co.*, 237 Neb. 44, 58, 464 N.W.2d 769, 778 (1991) (quoting *Travelers Ins. Co. v. Savio*, 706 P.2d 1258 (Colo. 1985)), *disapproved in part on other grounds, Wortman v. Unger*, 254 Neb. 544, 578 N.W.2d 413 (1998).

The LeRettes' evidence did not indicate that United Wisconsin's experts' opinions were unsound or false or that there was an absence of a reasonable basis to deny benefits. The evidence presented by the LeRettes did not inject doubt as to the fact that United Wisconsin had an arguable basis to initially deny the request for precertification. The question of whether a claim is fairly debatable is appropriately decided by the court as

a matter of law. *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320 (1998). As a matter of law, Mary's claim was fairly debatable and United Wisconsin had an arguable basis for initially denying benefits at the time of each such denial.

Despite their failure to show an absence of a reasonable basis for initially denying Mary's claim, the LeRettes refer us to various actions by United Wisconsin related to the initial denials which the LeRettes claim nevertheless demonstrate that United Wisconsin acted with bad faith. However, as anticipated in *Radecki*, where as here, the insurer had an arguable basis on which to initially deny the claim, the bad faith cause of action fails as a matter of law regardless of the manner in which an investigation was or was not conducted.

We conclude that the LeRettes did not present evidence to support a claim of bad faith. Therefore, the claim should not have been submitted to the jury, and the district court should have granted United Wisconsin's motion for directed verdict as to the entire bad faith cause of action at the close of the evidence. Because a directed verdict at the close of the evidence would have been appropriate, the district court should have granted United Wisconsin's motion to set aside the verdict and should have dismissed the claim. We therefore reverse the judgment on the cause of action for bad faith and remand the cause to the district court with directions to dismiss the claim.

Because we reverse the judgment on the bad faith cause of action and remand the cause for dismissal of the bad faith claim, it is not necessary to address United Wisconsin's assignment of error with respect to jury instructions regarding the purported defense of misrepresentation by deceit.

### 3. Cross-Appeal: Attorney Fees Pursuant to § 44-359

The LeRettes filed a cross-appeal and assigned error to the district court's denial of their application for attorney fees made as successful parties under § 44-359. Because we reverse the judgment in favor of the LeRettes, we do not consider this cross-appeal.

## VI. CONCLUSION

We conclude that the evidence was not sufficient to submit the bad faith claim to the jury. The district court therefore erred

in overruling United Wisconsin's motion for directed verdict on the bad faith cause of action in its entirety and in denying United Wisconsin's motion to set aside the verdict. We therefore reverse the judgment entered on the bad faith claim, and we remand the cause to the district court with directions to dismiss the bad faith claim.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.