IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

MEJIA V. CHAPMAN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ADELBERTO MEJIA, APPELLANT,

V.

RANDY CHAPMAN, APPELLEE.

Filed February 10, 2015.   No. A-13-1015.

Appeal from the District Court for Dawson County: JAMES E. DOYLE IV, Judge. Affirmed.

Siegfried H. Brauer, of Brauer Law Office, for appellant.

Angela R. Shute and Larry R. Baumann, of Kelley, Scritsmier & Byrne, P.C., for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Adelberto Mejia filed an action against Randy Chapman in the district court for Dawson County, seeking back wages under the Nebraska Wage Payment and Collection Act (NWPCA), Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissue 2010). The court denied Mejia's motion for partial summary judgment, and the matter proceeded to jury trial. The jury found that Mejia was an independent contractor and rendered a general verdict in favor of Chapman. Mejia appeals from the court's denial of his subsequent motion for new trial. Because we find no clear error in the jury verdict and no abuse of discretion in the court's denial of the motion for new trial, we affirm.

- 1 -

BACKGROUND

Chapman operates a construction business in Lexington, Nebraska. He initially operated his business under the name of Randy Chapman Construction or Chapman Construction. Until February 2009, Chapman operated his business as a sole proprietorship. In February 2009 he incorporated his business under the name Randy Chapman Construction, Inc. After forming the corporation, Chapman did not conduct his construction business any differently than before. Chapman did not maintain books, accounting records, bank accounts, or property in the name of the construction company.

Mejia and Chapman had an agreement for Mejia to perform various work on various building construction projects. The parties dispute the exact dates on which Mejia provided construction services for Chapman and the details of the work performed by Mejia on certain projects, but the record shows that at various times between approximately 2003 or 2005 and 2010, Mejia performed construction work for Chapman. The parties agreed that Mejia would be paid by the hour for all work done for Chapman.

Chapman initially paid Mejia at the rate of $10 per hour and later raised the rate of Mejia's hourly pay to $12. At Mejia's request, Chapman did not pay Mejia for his services on a regular schedule. Rather, Chapman would hold Mejia's earnings until requested by Mejia. Chapman paid Mejia for his construction work in cash. Chapman did not keep records of the dates or amounts of payments made to Mejia. Chapman did keep records showing the hours of service performed by Mejia. Mejia kept track of payments received from Chapman on his calendar but did not keep track of the hours he worked. The parties disputed the completeness and accuracy of each other's records at trial.

Chapman did not pay any federal or state withholding or taxes for the benefit of Mejia. Neither Chapman nor the construction company issued any report or record of any kind of wages paid to Mejia at any time prior to 2011, and Mejia did not request such report or record. In 2011, the construction company prepared and issued 1099s to Mejia for payments made to Mejia each year from 2005 through 2010.

In April 2010, Mejia asked Chapman for $500 from his earnings, but Chapman refused, saying that he had just paid Mejia. At that point, Mejia stopped working for Chapman, but after several months, Chapman asked him to provide construction services again. According to Mejia, he told Chapman, "Okay, you need my help, I'm going to help you. But . . . I also, need your help," and he rubbed his fingers together in a gesture Mejia claimed was understood by Chapman to mean he needed to be paid. Mejia began providing construction services again starting on September 28, 2010.

In November 2010, Mejia asked Chapman for all of his earnings, and Chapman gave him $1,800. Mejia claimed that he was owed more than that amount, so Chapman said he would figure out how much Mejia was owed. In December 2010, Chapman offered Mejia an additional $1,200, which Mejia refused, believing that he was owed more. Mejia quit working with Chapman on December 23, 2010. After this action was filed, Chapman sent Mejia a check for $1,452. Mejia refused to accept the check and mailed it back. Chapman believes that other than $1,452, he has paid Mejia everything Mejia is entitled to receive.

On June 7, 2011, Mejia filed a complaint in the district court, alleging that he was an employee of Chapman and had earned approximately $212,220 during the course of his employment, but that he had only been paid $53,800. He sought judgment under the NWPCA for $158,420, plus interest, costs, and attorney fees. Chapman denied the allegations in Mejia's complaint, and alleged that Mejia was an independent contractor and not an employee. Mejia later filed an amended complaint, adding Randy Chapman Construction, Inc. as a defendant. Randy Chapman Construction, Inc. was dismissed from the case at trial.

On February 1, 2013, Mejia filed a motion for partial summary judgment in the district court. Mejia asked the court to enter judgment on issues with respect to Chapman's liability, and to make findings, including finding that the action was subject to the NWPCA and that he was an employee and Chapman was an employer as defined in the NWPCA. On June 11, the court denied Mejia's motion for partial summary judgment.

A jury trial was held in the district court on June 18-20, 2013. We have set forth further details of the evidence presented and the instructions given to the jury in the analysis section below. The jury found that Mejia was an independent contractor and reached a verdict in favor of Chapman. The court entered judgment in accordance with the jury's verdict, dismissing Mejia's claims with prejudice.

On June 25, 2013, Mejia filed a motion for new trial in the district court, asserting irregularity in the proceedings, error in the assessment of the amount of recovery, and that the verdict was not sustained by sufficient evidence or contrary to law. The court denied Mejia's motion on October 16. The court considered Mejia's assertion that because Chapman admitted he owed Mejia $1,452, the jury was required to return a verdict for at least that amount. The court determined that this admission by Chapman was an extrajudicial admission and did not establish that the jury's verdict was untenable or that there was no rational explanation for the verdict. The court did not find any irregularities in the proceedings or insufficiencies in the evidence, found that the verdict was not contrary to law, and denied the motion. Mejia subsequently perfected his appeal to this court.

## ASSIGNMENTS OF ERROR

Mejia assigns error to (1) the district court's failure to grant his motion for partial summary judgment, (2) the jury's finding that he was not entitled to unpaid wages, (3) the jury's finding that he was an independent contractor, and (4) the court's failure to grant his motion for new trial.

## STANDARD OF REVIEW

The denial of a summary judgment motion is neither appealable nor reviewable. *Guinn v. Murray*, 286 Neb. 584, 837 N.W.2d 805 (2013).

A jury verdict will not be set aside unless clearly wrong, and it is sufficient if any competent evidence is presented to the jury upon which it could find for the successful party. *Wulf v. Kunnath*, 285 Neb. 472, 827 N.W.2d 248 (2013). In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence. *Id.*

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Martensen v. Rejda Bros., Inc.*, 283 Neb. 279, 808 N.W.2d 855 (2012). A judicial abuse of discretion exists when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Breci v. St. Paul Mercury Insurance Company*, 288 Neb. 626, 849 N.W.2d 523 (2014).

ANALYSIS

*Denial of Summary Judgment.*

Mejia asserts that the district court erred in failing to grant his motion for partial summary judgment. A denial of a motion for summary judgment is an interlocutory order, not a final order, and therefore not appealable. *Breci v. St. Paul Mercury Insurance Company, supra.* The only exception to this general rule applies when adverse parties have both moved for summary judgment and the trial court has sustained one of the motions. See *Big River Const. Co. v. L & H Properties, Inc.*, 268 Neb. 207, 681 N.W.2d 751 (2004). That did not occur in this case. Whether a motion for summary judgment should have been granted generally becomes moot after trial. *Guinn v. Murray, supra.* This is because the overruling of such a motion does not decide any issue, but merely indicates that the trial court was not convinced that the moving party was entitled to judgment as a matter of law. *Id.* After trial, the merits should be judged in relation to the fully developed trial record, not whether a different judgment may have been warranted on the record at summary judgment. *Id.* Accordingly, we do not consider whether the court erred in failing to grant Mejia's motion for partial summary judgment.

*Entitlement to Unpaid Wages.*

Mejia asserts the jury erred in finding that he was not entitled to unpaid wages. Specifically, he argues that Chapman's admission during trial that he owed Mejia $1,452 was a judicial admission. In ruling on Mejia's motion for new trial, the district court determined that this was merely an extrajudicial admission.

A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true. *Reicheneker v. Reicheneker*, 264 Neb. 682, 651 N.W.2d 224 (2002) (finding defendants' testimony that they felt negligent and responsible for injuries in a negligence action did not amount to judicial admission but were merely opinions or evidence of their state of mind). With respect to judicial admissions, the Nebraska Supreme Court has stated:

> [W]here a party testifies clearly and unequivocally to a fact which is within his own knowledge, such testimony may be considered as a judicial admission. That rule has particular application where, as here, the parties so testifying made no effort to retract, qualify, or otherwise explain the positive force of their own evidence.

*Southwestern Truck Sales & Rental Co. v. Johnson*, 165 Neb. 407, 417, 85 N.W.2d 705, 711 (1957) (witnesses' testimony was judicial admission and although disputed by other evidence, witnesses made no effort to retract, qualify, or otherwise explain their own evidence); *Alford v.*

*Neal*, 229 Neb. 67, 425 N.W.2d 325 (1988) (defendant's testimony in replevin action was unequivocal to establish plaintiff's payment for and ownership of disputed property).

On the other hand, an extrajudicial admission is simply an item of evidence in the mass of evidence adduced during a trial, admissible in contradiction and impeachment of a present claim and other evidence of the party making the admission. *Federal National Mortgage Association v. Marcuzzo*, 289 Neb. 301, 854 N.W.2d 774 (2014). An extrajudicial admission is not ordinarily final and conclusive upon the party by whom it was made, in the absence of controlling elements of estoppel. *Aye v. Gartner*, 172 Neb. 162, 108 N.W.2d 798 (1961). The applicable rule is that extrajudicial statements of fact made by a party relating to matters material to the issues in a controversy are available to the adverse party in a trial thereof as admissions against interest or for impeachment. Such statements are, however, not conclusive but may be explained, rebutted, or contradicted, and thereafter are to be given such weight as the trier of the facts deems them entitled. *Ferlise v. Raznick*, 202 Neb. 745, 277 N.W.2d 94 (1979); *Dorn v. Sturges*, 157 Neb. 491, 59 N.W.2d 751 (1953).

The evidence in this case shows that after this action was filed, Chapman sent Mejia a check for $1,452, which Mejia refused to accept and mailed back to Chapman. Chapman testified that other than $1,452, he has paid Mejia everything Mejia is entitled to receive. Chapman arrived at the amount of $1,452 based on his records. Chapman prepared an exhibit summarizing the hours that Mejia had worked and had been paid for. This exhibit shows a balance due of $1,452. On the other hand, there was evidence adduced that Chapman had not kept track of the payments made to Mejia over the years and the amount due to Mejia, if any, was greatly disputed at trial. Despite this conflicting evidence, Chapman testified clearly and unequivocally that he still owed Mejia $1,452. Chapman made no effort to retract, qualify, or otherwise explain his own evidence. We conclude that the evidence adduced by Chapman that he owed Mejia $1,452 constituted a judicial admission.

However, this is not the end of the inquiry as to whether the jury erred in not awarding Mejia the sum of $1,452. Instead, we must examine the instructions given to the jury by the trial court to determine whether the jury was properly instructed on the law. The statement of the case jury instruction, No. 2, with respect to Chapman's claims, included the statement that "Chapman admits there is $1,452.00 still owed to Mejia but Chapman denies that any more money than $1,452 is owed to Mejia." However, this statement was not included in the "uncontroverted facts" portion of the jury instructions. The jury was still instructed that Mejia had the burden of proving the nature and extent of his damages. The jury was instructed that if Mejia had not met his burden of proof, then the verdict must be for Chapman. The jury was further instructed that if it found in favor of Mejia on his breach of employment agreement claim, it had to determine the amount of damages, which were defined for the jury as follows:

(1) Mejia's damages are the amount of money Mejia should have been paid by Chapman for the entire period Mejia worked for Chapman reduced by the amount of the payments made to him by Chapman.

(2) If you find in favor of Mejia but also find Mejia did not suffer any actual damage, then you may award Mejia nothing or a nominal sum.

Mejia did not object to the foregoing portions of Instruction No. 2.

During its deliberations, the jury submitted two questions, and the district court gave the following supplemental instruction:

Members of the jury you asked the following questions.

1. If we find for the defendant does Chapman still owe Mejia $1,452?

Instruction: If you find for the defendant, the judgment will be entered in favor of Chapman and the court will not require any payment to the plaintiff.

2. If we feel Chapman still owes $1,452, do we find in favor of plaintiff @ $1,452?

Instruction: Yes.

During the discussion between counsel and the court regarding these questions, Mejia's counsel did not object to the court's proposed supplemental instructions set forth above, and in fact suggested that the jury should be informed that a verdict for Chapman relieves him of all liability for any amounts due Mejia. These supplemental instructions, when taken together, allow the jury to find in favor of Chapman without awarding $1,452 to Mejia. Thus, we cannot find that the jury was clearly wrong in following the instructions given to it by the court.

Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error. *Kuhnel v. BNSF Railway Company*, 287 Neb. 541, 844 N.W.2d 251 (2014). Plain error exists where there is an error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Id*. In addition, a party cannot complain of error which that party has invited the court to commit. *In re Estate of Jeffrey B.*, 268 Neb. 761, 688 N.W.2d 135 (2004). Because Mejia did not object to the instructions given to the court, and in fact suggested the language given by the court in the supplemental instructions, he cannot now complain that the jury was improperly instructed, absent plain error. We recognize that Mejia has not assigned any error to the jury instructions in this appeal. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Irwin v. West Gate Bank*, 288 Neb. 353, 848 N.W.2d 605 (2014). Thus, our only remaining inquiry is whether the trial court committed plain error in the jury instructions.

We recognize that a trial court has the duty to correctly instruct the jury on the law without any request to do so. *Russell v. Stricker*, 262 Neb. 853, 635 N.W.2d 734 (2001). Any instructions regarding judicial admissions should be given as part of the general statement-of-the-case instruction. See, Comments, NJI2d Civ. 1.53, 2.01 (2014-2105 Edition). In this case, the statement of the case instruction, No. 2, included the statement that "Chapman admits there is $1,452 still owed to Mejia . . ." The jury was further instructed on the appropriate burdens of proof. Finally, the jury was instructed that if it felt that Chapman still owed Mejia $1,452, it was to find in favor of the Mejia for this amount. Thus, the substance of the jury instructions adequately informed the jury as to the law of the case. We decline to find that the district court's instructions have resulted in a miscarriage of justice or resulted in damage to the integrity, reputation, and fairness of the judicial process. Consequently, we find no plain error in the jury instructions.

Based upon the verdict rendered in favor of Chapman, it is apparent that the jury did not feel that Chapman still owed Mejia the sum of $1,452. Given the record in this case, and in particular noting the lack of concrete record-keeping by either party regarding Mejia's hours and wages paid, we cannot say that the jury verdict in favor of Chapman was clearly wrong.

To the extent that Mejia's arguments in support of this assignment of error are addressed to the jury's failure to find that he was entitled to unpaid wages above and beyond the $1,452, there was conflicting evidence presented, making this a matter for the jury's determination. It is for the jury, as trier of the facts, to resolve conflicts in the evidence and to determine the weight and credibility to be given to the testimony of the witnesses. *Orduna v. Total Const. Services, Inc.*, 271 Neb. 557, 713 N.W.2d 471 (2006).

*Employee or Independent Contractor.*

Mejia asserts that the jury erred in finding that he was not an employee for purposes of the NWPCA, and was instead an independent contractor. In the summary of argument section of his brief, he argues that the NWPCA provides a self-contained remedy for employees with complaints for unpaid wages. In the argument section of his brief corresponding to this assignment of error, he asserts that under the NWCPA, in the absence of meeting the elements of exclusion under the act, the hired party is an employee.

Neb Rev. Stat. § 48-1229 (Reissue 2008) provides:

Employee means any individual permitted to work by an employer pursuant to an employment relationship or who has contracted to sell the goods or services of an employer and to be compensated by commission. Services performed by an individual for an employer shall be deemed to be employment, unless it is shown that (a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his or her contract of service and in fact, (b) such service is either outside the usual course of business for which such service is performed or such service is performed outside of all the places of business of the enterprise for which such service is performed, and (c) such individual is customarily engaged in an independently established trade, occupation, profession, or business. This subdivision is not intended to be a codification of the common law and shall be considered complete as written. . . .

In its instructions to the jury, the district court did not define "employee" in the terms used by § 48-1229. It instructed the jury as follows:

It is possible for a person to employ another to do work either as an employee or an independent contractor. In this case, you must decide whether Mejia was an employee of Chapman or whether Mejia was an independent contractor.

An employee is a person employed to perform services in the affairs of another and who, with respect to the physical conduct in the performance of the services, is subject to the other's control or right to control.

An independent contractor is one who agrees to perform a service for another but whose conduct in the performance of the service is not subject to the right of control by the other.

The district court then instructed the jury that it was to apply a 10-factor test in determining whether Mejia was an employee or an independent contractor.

Mejia did not object to the definition of employee used in the jury instruction on his employment status. Rather, Mejia argued only that the jury should be instructed that control was the most important factor of the 10-factor test, and the district court did include such an instruction to the jury, which stated that "[w]hile no one of the above factors is conclusive, the extent of control is the chief factor distinguishing an employee from an independent contractor relationship."

Because Mejia failed to object to the jury instruction defining employee and independent contractor, he is precluded from raising any objection to the instruction on appeal. *Kuhnel v. BNSF Railway Company*, 287 Neb. 541, 844 N.W.2d 251 (2014) (failure to object to jury instruction precludes raising objection on appeal absent plain error). And, again, Mejia does not assign error to the jury instruction defining employee in this appeal. To the extent that Mejia's arguments on appeal amount to an assertion that the employee-independent contractor test applied in other contexts is inapplicable under the NWPCA and that the district court misinterpreted the definition under § 48-1229, we decline to apply a plain error analysis.

Next, Mejia argues that the evidence supports a finding that under the common law 10-factor test, the jury should have found that he was an employee rather than an independent contractor.

Ordinarily, a party's status as an employee or an independent contractor is a question of fact. However, where the facts are not in dispute and where the inference is clear that there is, or is not, a master and servant relationship, the matter is a question of law. *Williams v. Allstate Indem. Co.*, 266 Neb. 794, 669 N.W.2d 455 (2003). No single test exists for determining whether one performs services for another as an employee or as an independent contractor, and the following factors must be considered: (1) the extent of control which, by the agreement, the employer may exercise over the details of the work; (2) whether the one employed is engaged in a distinct occupation or business; (3) the type of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the one employed supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the one employed is engaged; (7) the method of payment, whether by the time or by the job; (8) whether the work is part of the regular business of the employer; (9) whether the parties believe they are creating an agency relationship; and (10) whether the employer is or is not in business. *Id.* While no one factor is determinative, control is the most important factor to be considered in determining whether someone is an employee or independent contractor. *Id.* This was the 10-factor test included in the jury instructions given in this case.

The facts concerning Mejia's employment status were clearly in dispute and the resolution of this issue was a question of fact. While there was evidence from which the jury could have found that Mejia was Chapman's employee, there was also competent evidence presented from which the jury could have found Mejia to be an independent contractor. Although Chapman set the rate of pay and Mejia was paid by the hour, Mejia arranged the timing and form of the payments he received. Chapman did not pay any federal or state withholding taxes for

Mejia. Chapman testified that 1099 forms were sent out to subcontractors for money they were paid. In 2011, Chapman had his accountant prepare and send out 1099 forms to Mejia for payments made to him from 2005 to 2011. Chapman's accountant testified that Chapman uses subcontractors and that Chapman told him he was paying Mejia cash as a subcontractor. Another individual who had been doing construction work with Chapman since 1997 testified that he was self-employed.

Mejia started a construction company called Dawson Reconstruction approximately 5 or 6 years prior to trial. Through this company, he does general construction work on weekends and in the evenings. Mejia prepared a document with a handwritten label "Sched C" for Dawson Reconstruction to give to his tax preparer in 2010, showing various amounts of income received for his construction work, including cash received from Chapman. Although Mejia testified that he considered himself a full-time employee of Chapman, the evidence about the hours he worked and the projects on which he worked was disputed. The evidence was also disputed as to the type of work Mejia did on each project, but there was evidence that he did not perform carpentry finish work and that once a project reached the finish work stage, Mejia was no longer needed.

Considering the evidence most favorably to Chapman and resolving evidentiary conflicts in his favor as we must, we find that the jury verdict determining that Mejia was an independent contractor was not clearly wrong.

*Motion for New Trial.*

Mejia asserts that the district court erred in failing to grant his motion for new trial. Mejia argues primarily that a new trial was warranted since the jury failed to award him at least the $1,452 admitted to be owed by Chapman. Although we disagree with the district court's conclusion that Chapman's statements were not judicial admissions, because Mejia did not object to the jury instructions given on this issue and does not assign error to the instructions, we conclude that the jury verdict was not clearly wrong. Thus, the district court did not abuse its discretion in denying Mejia's motion for new trial.

## CONCLUSION

The jury verdict determining that Mejia was an independent contractor and finding in favor of Chapman on Mejia's claim for unpaid wages was not clearly wrong. The district court did not abuse its discretion in denying Mejia's motion for new trial.

AFFIRMED.

- 9 -